UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
THE ANNUITY, PENSION, WELFARE,
and TRAINING FUNDS of the
INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 14-
14B, AFL-CIO by its TRUSTEES
EDWIN L. CHRISTIAN, CHRIS
CONFREY, JOHN CRONIN, FRANK
DiMENNA, ALFRED GEROSA, JOHN
HYERS, DANIEL NOESGES, and JOHN F.
O'HARE; JOHN DOE; and JANE DOE,
BENEFICIARIES of THE ANNUITY,
PENSION, WELFARE and TRAINING
FUNDS of the INTERNATIONAL UNION
OF OPERATING ENGINEERS, LOCAL 14-
14B, AFL-CIO,

**OPINION AND ORDER**
06-CV-0701 (NG) (JMA)

        Plaintiffs,

  -against-

A.J.S. TRUCKING & EXCAVATING
CORP.,
------------------------------------------------------------x

**GERSHON, United States District Judge:**

      This is an action to obtain judgment for unpaid contributions to multi-employer benefit plans pursuant to sections 502 and 515 of the Employee Retirement Income Security Act of 1974, *as amended*, 29 U.S.C. §§ 1132(a)(3) and 1145 ("ERISA"), and to enforce the terms of the collective bargaining agreement ("CBA") pursuant to section 301(a) of the Labor-Management Relations Act, *as amended*, 29 U.S.C. § 185(a) ("LMRA"). Plaintiffs sue in their capacity as fiduciaries of the various Funds and seek the following: (1) a court order requiring A.J.S. Trucking to submit to an audit of its financial records for the period August 1, 2002 through the present; (2) payment of all unpaid contributions due and owing; (3) interest on the unpaid contributions; (4) penalty interest or

liquidated damages; and (5) attorney's fees and costs. For the reasons set forth below, plaintiff's request is granted in part and denied in part.

## I. BACKGROUND

The Funds are multi-employer benefit plans within the meaning of ERISA, 29 U.S.C. §§ 1002(3) and (37), and collect contributions from employers on behalf of all covered employees. The Funds are established and maintained pursuant to a CBA between Local 14-14B of the International Union of Operating Engineers (the "Union") and defendant effective January 28, 1991.[1] Defendant A.J.S. Trucking is an employer under ERISA and employs individuals represented by the Union. Defendant was, at all relevant times, and continues to be, bound to the terms of the CBA, which sets forth the wages, hours, other terms and conditions of employment, and obligates defendant to contribute monthly payments to the Funds on behalf of all employees covered by the CBA. Additionally, as a signatory to the CBA, defendant adopted the Declaration of Trust ("Trust Agreement"), which further governs the parties' rights and liabilities under the CBA.

Plaintiffs allege that, despite two previous requests, defendant failed to submit to an audit of its financial records, as required by the Trust Agreement. As a result, plaintiffs have been unable to ascertain the amount, if any, of unpaid contributions for the period August 1, 2002 through the present. Plaintiffs commenced the instant action on February 16, 2006, seeking (1) a court order requiring A.J.S. Trucking to submit to an audit of its financial records for the period August 1, 2002

---

[1] The CBA states that "the Employer agrees to be bound by any and all amendments, renewals or extensions of the above referenced Association of Collective Bargaining Agreements unless and until this agreement is properly terminated by either the Employer or the Union as permitted by law." CBA ¶ 5. Nothing in the record suggests that either party terminated the CBA. Therefore, defendant remains bound by the terms and conditions set forth in the CBA and the Trust Agreements.

through the present; (2) payment of all unpaid contributions due and owing; (3) interest on the unpaid contributions; (4) penalty interest or liquidated damages; and (5) attorney's fees and costs. After having been personally served with copies of the summons and complaint, defendant failed to answer or otherwise move with respect to the complaint and the time to do so has expired. To date, defendants have failed to make an appearance. As a result, a notation of default was entered by the Clerk of Court on June 26, 2006. On July 7, 2006, the court granted plaintiff's motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure.

## II. DISCUSSION

### A. Proof of Damages

Defendant's default amounts to an admission of liability. Therefore, all of the well-pleaded allegations in plaintiffs' complaint pertaining to liability are deemed true. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Plaintiffs, however, must prove damages before the entry of a final default judgment. *See Credit Lyonnais Sec., Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). The district court must conduct an inquiry to ascertain the amount of damages with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that when granting a default judgment, if "it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence . . . the court may conduct such hearings or order such references as it deems necessary and proper . . . ." The Second Circuit has held that, under Rule 55(b)(2), "it is not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment." *Transatlantic Marine*, 109

F.3d at 111 (citation and internal quotations omitted).

## B. ERISA Relief

ERISA allows employee benefit plan fiduciaries to bring civil actions to enforce the provisions of the plan and obtain equitable relief. *See* 29 U.S.C. § 1132(a)(3)(B)(ii); *see also id.* § 1132(d)(1). Section 1145 makes clear that a plan member's contractual duty to make contributions to multiple employer plans "becomes a statutory requirement, and the duty may be enforced in accordance with § 1132(g)(2)." *Gilles v. Burton Const. Co.*, 736 F.2d 1142, 1143 n.2 (7th Cir. 1984).[2] With respect to actions by fiduciaries, ERISA also provides for the recoupment of attorney's fees and costs stemming from the collection of delinquent contributions. Section 1132(g)(2) provides that in such actions the district court shall award the following:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in
> an amount not in excess of 20 percent (or such higher
> percentage as may be permitted under Federal or State

---

[2] Section 1145 requires:

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. According to the Second Circuit, Congress adopted § 1145 so that benefit plans could rely on their agreements and "recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law . . . ." *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2d Cir. 1990) (citation and internal quotation marks omitted). "Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations." *Id.*

>law) of the amount determined by the court under
>subparagraph (A),
>(D) reasonable attorney's fees and costs of the action, to be paid by
>the defendant, and
>(E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Since this action was brought on behalf of employee benefit plans, § 1132(g)(2) controls.

### 1. Audit

Plaintiffs seek an order compelling defendant to submit to an audit of its financial records for the period August 1, 2002 through the present so that they may ascertain the amount, if any, of unpaid contributions that are due and owing to the Funds.

In an action for nonpayment of contributions to an employee benefit fund, a court may grant "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. § 1132(g)(2)(E). Such relief necessarily includes an injunction compelling defendant to submit to an audit of its financial records, as required by the terms of the Trust Agreement.[3] *See e.g. Mingoia v. Am. Lath & Plaster Co., Inc.*, No. 03 Civ. 6491, 2004 WL 2782010, at *3 (S.D.N.Y. Dec. 2, 2004) (granting an injunction requiring defendant to cooperate in audit); *Mason Tenders Dist. Council Welfare Fund v. Duce Constr. Corp.*, No. 02 Civ. 9044, 2003 WL 1960584, at *3 (S.D.N.Y. Apr. 25, 2003) (same). In *Central States, Southeast and Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 581 (1985), the Supreme Court recognized that the right of employee benefit plan fiduciaries to conduct audits is consistent with ERISA. Accordingly, plaintiffs are granted an injunction compelling defendant to submit to an audit of its financial records for the period August 1, 2002

---

[3] Section 4.12 of the Trust Agreement states that an employer's financial records "shall be subject to audit . . . when the Trustees deem such examination and audit advisable."

through the present.

## 2. Attorney's Fees and Costs

### a. Attorney's Fees

Plaintiffs also seek an award of attorney's fees pursuant to 29 U.S.C. § 1132(g)(2), which mandates that courts award reasonable attorney's fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the CBA. The Second Circuit has adopted the lodestar approach to calculating attorneys' fees. *See Bourgal v. Lakewood Haulage, Inc.*, 827 F. Supp. 126, 129 (E.D.N.Y. 1993) (citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 885 F.2d 1053, 1058-59 (2d Cir. 1989)). Under the lodestar method, attorney's fees are determined by taking "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *see also Chambless*, 885 F.2d at 1058-59.

Reasonable hourly rates are determined by reference to "the prevailing [marketplace rates] in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Cruz v. Local Union No. 3*, 34 F.3d 1148, 1159 (2d Cir. 1994) (citation and internal quotation marks omitted). To receive such fees, plaintiffs must present time records to substantiate their fee request. *New York Ass'n for Retarded Children v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983). Such time records must be contemporaneous and indicate "for each attorney, the date, the hours expended, and the nature of the work done." *Id.* at 1148. Once the lodestar has been calculated, the district court takes into account "subjective factors, such as the risk of the litigation, the complexity of the issues, and the skill of the attorneys," *Id.* at 1140, and should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Finally, a fee applicant has the burden of establishing its hourly rate and hours expended. *Blum*, 465 U.S. 886,

896 n.11 (1984).

In support of plaintiffs' request for attorney's fees, plaintiffs' attorney, James M. Steinberg, has submitted contemporaneous time records that reflect 5.75 hours of work performed during the pendency of this action, amounting to $1,437.50. These records reveal that counsel prepared, *inter alia*, a summons and complaint and a motion for default judgment. Mr. Steinberg bills at an hourly rate of $250.00. Having reviewed the attorney affidavit and contemporaneous time records, the court finds that both the total hours expended and the hourly billing rates are reasonable. Accordingly, plaintiffs are awarded $1,437.50 for reasonable attorney's fees incurred during the pendency of this action.

### b. Costs

Pursuant to 29 U.S.C. § 1132(g)(2)(D), plaintiffs also seek reimbursement for costs and disbursements in the amount of $425.00, reflecting $250.00 for the court filing fee, $155.00 for service of process, and $20.00 for the "statutory fee." Plaintiffs have submitted documentation to substantiate their request for reimbursement of the filing fee and service of process. However, plaintiffs have failed to provide documentation regarding the "statutory fee." More importantly, however, plaintiffs have not provided a description of this so-called "statutory fee," nor have they referenced any specific statute that entitles them to this fee. Therefore, plaintiff's request for reimbursement of the "statutory fee" is denied, and plaintiffs are awarded $405.00 for costs and disbursements.

### 3. Unpaid Contributions, Interest and Liquidated Damages

Plaintiffs also seek payment of all unpaid contributions due and owing, interest on the unpaid contributions, and penalty interest or liquidated damages. Since an audit of defendant's employee

payroll records has not yet been conducted, there is no basis for awarding these damages. Upon completion of the audit, plaintiffs will be permitted to petition the court for an amended judgment to request additional relief if necessary.

### III.  CONCLUSION

For the foregoing reasons, plaintiffs' request for injunctive relief compelling defendant to submit to an audit of its financial records so that plaintiffs may ascertain the amount, if any, of unpaid contributions due and owing for the period August 1, 2002 through the present is granted. Furthermore, plaintiffs are awarded $1,842.50 for attorney's fees and costs. Upon completion of the audit, plaintiffs will be permitted to petition the court for an amended judgment  to request additional relief if necessary.

                                                 **SO ORDERED.**

                                                   /s/ *Nina Gershon*
                                                 **NINA GERSHON**
                                                 **United States District Judge**

Dated: February 16, 2007
       Brooklyn, New York